UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE FARRAR and CHARLES
ALLEN, JR. as Co-Personal
Representatives of the Estate of
CHASE DESHAWN ALLEN, Deceased,
STEPHANIE FARRAR and CHARLES
ALLEN, JR., as Co-Personal
Representatives of the Estate of BABY
ALLEN, Deceased and STEPHANIE
FARRAR, Individually,

        Plaintiffs,

    vs.

RYAN PAUL LAPAN and
RUCKER'S WHOLESALE &
SERVICE CO.,

        Defendants.

Case No. 20-CV-10554

HON. GEORGE CARAM STEEH

_____/

OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF NO. 46)

This negligence action arises out of a December 10, 2019 motor

vehicle collision. Plaintiffs are Stephanie Farrar and the Estates of Chase

Deshawn Allen and "Baby Allen". Defendants are Ryan Paul Lapan and

Rucker's Wholesale & Service Co. The matter is before the Court on

defendants' motion for partial summary judgment against the claims made

by Stephanie Farrar individually and the Estate of "Baby Allen". Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). Because there are genuine issues of material fact in dispute, defendants' motion for summary judgment is DENIED.

FACTUAL BACKGROUND

On December 10, 2019, at 6:00 a.m., Stephanie Farrar was driving eastbound on I-94 with her one-year-old son, Chase Allen. Farrar testified at her deposition that she was driving in the left-hand lane when she heard a thud and realized her right rear tire was flat. She looked around and saw traffic on her right side and construction signs on her left side. Farrar slowed down in preparation to move to the left shoulder. While she slowed her speed and continued to drive in the left lane, Farrar used her cell phone to make two phone calls. First, she called her fiancé, Charles Allen. After hanging up with Charles, Farrar called her father to ask him for help with the tire. Farrar's vehicle was hit from behind while she was on the phone call with her father.

Farrar's vehicle was equipped with an event data recorder ("EDR"), which tracked the vehicle's speed at 11.8 to 10.3 miles per hour in the five seconds prior to the impact. Sergeant Chad Lindstrom responded to the

scene and issued an incident report. Lindstrom testified at his deposition that after observing the right rear tire both at the scene and at a later date, and being aware that Farrar stated she was having a problem with her car, he deduced that the vehicle had been driven on the flat tire for a period of time prior to impact. Lindstrom also testified that Farrar's hazard lights were not on at the time of the collision. Lindstrom described the conditions at the time of the collision as dark, with the roadway illuminated with artificial light, the surface of the roadway was dry and there was medium traffic.

Ryan Lapan was driving a van owned by his employer, Ruckers Wholesale & Service, Co. Just prior to the collision, Lapan was also driving in the left-hand lane of I-94. The Michigan State Police Crash Data Retrieval shows that Lapan was travelling at a speed of 78 miles per hour.

Following the collision, Farrar was taken to St. John Hospital Moross. Farrar believed she was pregnant because she had six positive home pregnancy tests taken one day before the accident. Defendant's medical expert, Dr. Barbara Levine-Blasé, an Obstetrician and Gynecologist, reviewed Farrar's medical records. Dr. Levine-Blasé notes in her expert report that Farrar was given a urine pregnancy test at St. John Hospital prior to imaging in accordance with radiology procedures, and that the test was negative. Prior to her discharge from St. John, Farrar underwent a

- 3 -

second urine pregnancy test which was also negative. On December 13, 2019, Farrar presented to Beaumont Hospital Grosse Pointe and underwent additional urine and beta serum pregnancy tests. All the pregnancy tests taken at the hospitals were negative. Dr. Levine-Blasé opines that Farrar was not pregnant at the time of, or immediately following, the accident, and that she did not miscarry because of the accident.

Plaintiff's medical expert, Obstetrician and Gynecologist Dr. Michael Cardwell, reviewed the deposition transcripts and medical records in the case. Dr. Cardwell opined that Farrar was "more likely than not pregnant at the time of the collision" and "more likely than not miscarried due to the trauma of the collision."

Defendants move for summary judgment on Farrar's individual claims because her damages are barred under Michigan's comparative fault statute. Defendants seek summary judgment as to the claims made on behalf of "Baby Allen" because Farrar was not pregnant at the time of the accident. Plaintiffs respond that viewing the evidence in the light most favorable to Farrar, genuine issues of material fact remain concerning whether Farrar was comparatively negligent, as well as whether she was pregnant at the time of the collision. Plaintiffs further argue that the motion is premature because depositions of their expert witnesses are scheduled

but have not been completed. Finally, pursuant to a limited protective order entered by the Court, defendant driver Lapan may not be deposed until the conclusion of the criminal investigation and potential prosecution arising from the collision.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v.*

*Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury

could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

I.    Stephanie Farrar's Claim for Damages

Defendants contend that Farrar's claim for damages is barred by Michigan's comparative fault rule which provides that "damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135. Comparative fault is a question of fact for the jury unless "no reasonable juror could find that defendant was more at fault than the [plaintiff] in the accident," *Huggins v. Scripter*, 669 N.W.2d 813 (Mich. 2003). The Michigan Supreme Court views the standard of care for purposes of comparative negligence as "theoretically indistinguishable from the applicable standard for determining liability in common-law negligence: the standard of conduct to which one must conform for his own protection is that of "a reasonable [person] under like circumstances." *Lowe v. Est. Motors Ltd.*, 428 Mich. 439, 455–56 (1987) (citations omitted).

Defendants argue that Farrar failed to act as a reasonable person under like circumstances when she drove an unsafe vehicle in the left-hand freeway lane at approximately 10 miles per hour. Furthermore, while a

reasonable person would have pulled onto the shoulder, Farrar continued to drive long enough to make two phone calls and cause damage to the rim of her vehicle's rear right tire. Finally, a reasonable person would have illuminated their hazard lights to alert other drivers that they were experiencing car trouble, but Farrar did not do so.

As further evidence that Farrar failed to exercise reasonable care for her own safety, defendants point out that she violated two Michigan statutes. First, MCL 257.627 requires that a "person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time." Defendants argue that Farrar created a danger by driving 10 miles per hour for several seconds prior to the accident where the maximum speed limit is 70 miles per hour and the minimum speed is 55 miles per hour. Furthermore, the evidence shows that Farrar was driving below the speed limit in the left highway lane for a significant period of time given that she made two phone calls between the time she became aware of the flat tire and the time she was hit from behind.

The second statute that defendants point to is MCL 257.767b, which mandates that an individual "shall not block, obstruct, impede, or otherwise

interfere with the normal flow of vehicular . . . traffic upon a public street or highway in this state, by means of a barricade, object, or device, or with his or her person." By driving up to 60 miles per hour below the posted speed limit on a Michigan freeway, Farrar impeded and interfered with the normal flow of traffic. Defendants argue that a reasonable driver under like circumstances would not drive their vehicle as slowly, for as long, and without illuminating their emergency hazard lights as Farrar did in this case.

For her part, Farrar testified that there were constructions signs in the highway's shoulder to her left. A reasonable person in like circumstances would have to clear the construction signs before merging onto the left shoulder. Also, while Farrar did not engage her hazard lights, she did apply her brakes, so her brake lights would have been illuminated. Furthermore, Farrar testified that she had turned on her left turn signal.

The evidence also shows that Lapan was driving over the maximum posted speed limit, at 78 miles per hour, when he collided with Farrar's car. There is a suggestion in one of the incident reports that Lapan told a doctor that he took his eyes off the road to reach down for food just before the collision. However, Lapan did not make this statement directly to the police, he would not confirm the statement, and the doctor who Lapan allegedly spoke to declined to speak about what was said. (Tr. Nancy Troye report,

ECF No. 49, PageID.1410). Lapan's airbag control module indicated that his brake was not applied and there was no change in his speed just before impact. Plaintiff's accident reconstruction expert, Tim Robbins, concluded that based on the evidence he reviewed, "careless and reckless driving on the part of Mr. Lapan, is the proximate cause for the crash." (Robbins report, ECF No. 49, PageID.1490).

Just as defendants cite to certain Michigan driving statutes, plaintiffs cite others to support their position that Lapan's negligence was a significant cause of the collision. MCL 257.402(a) provides that when a vehicle strikes the rear end of another vehicle proceeding in the same direction, "the driver . . . of the first vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator." Plaintiffs also cite to MCL 257.627, which provides, "a person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead." Lapan's excessive at the time of the collision arguably contributed to the fact that he was unable to stop prior to rear-ending Farrar's vehicle.

Issues of fact regarding apportionment of fault and weighing of evidence are left to the determination of the jury. Viewing the evidence in

the light most favorable to plaintiffs, a genuine issue of material fact
remains concerning whether Farrar was more than 50 percent at fault.

II.   "Baby Allen's" Wrongful Death Claim

Michigan's Wrongful Death Statute provides an action for wrongful
death where (1) a death has occurred; (2) the death was caused by
wrongful act, neglect, or fault of another; and (3) had the death not ensued,
a cause of action could have been filed against the responsible party. MCL
600.2922; *Simpson v. Alex Pickens, Jr. & Assoc. MD, PC*, 311 Mich. App.
127, 136 (2015). Defendants contend that the evidence demonstrates that
Farrar was not pregnant at the time of the accident, therefore a pregnancy
was not terminated as a result of the subject accident. In support,
defendants put forth Farrar's medical records and the opinion of Dr. Levine-
Blasé that Farrar "was not pregnant during the accident nor did she
miscarry.

Plaintiffs counter with the opinion of their medical expert, Dr.
Cardwell, that Farrar was more likely than not pregnant at the time of the
collision and that she likely miscarried due to the trauma of the collision.
Plaintiffs also submit a photograph that they describe as showing six
positive at-home pregnancy tests taken by Farrar on December 9, 2019.

- 11 -

Defendants attack the basis of Dr. Cardwell's opinion as being based on Farrar's self-reported complaints of vaginal bleeding that occurred weeks after the collision and were not noted in any of the contemporaneous hospital records. However, viewing the evidence in the light most favorable to Farrar, there is sufficient evidence to support a genuine issue of material fact concerning whether she was pregnant on the date of the collision. The jury should have the opportunity to assess the credibility of the witnesses and weigh the evidence in making a factual determination in this regard.

## <u>CONCLUSION</u>

Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that defendants' motion for summary judgment (ECF No. 46) is DENIED.

Dated:  November 19, 2021

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 19, 2021, by electronic and/or ordinary mail.

<u>s/Brianna Sauve</u>
Deputy Clerk

---