UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE FARRAR and CHARLES
ALLEN, JR. as Co-Personal
Representatives of the Estate of
CHASE DESHAWN ALLEN, Deceased,
STEPHANIE FARRAR and CHARLES
ALLEN, JR., as Co-Personal
Representatives of the Estate of BABY
ALLEN, Deceased and STEPHANIE
FARRAR, Individually,

              Plaintiffs,

  vs.

RYAN PAUL LAPAN and
RUCKER'S WHOLESALE &
SERVICE CO.,

              Defendants.
_____/

Case No. 20-CV-10554

HON. GEORGE CARAM STEEH

OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS CASE WITH PREJUDICE (ECF NO. 66) AND DENYING AS
MOOT PLAINTIFFS' MOTION TO WITHDRAW EVIDENCE (ECF NO. 67)

    This is a negligence action arising out of a motor vehicle collision. The crash killed one-year-old Chase Allen and injured Stephanie Farrar, mother of Chase Allen. Stephanie Farrar also alleges that she was pregnant and suffered a miscarriage of "Baby Allen" because of the accident. Plaintiffs are Stephanie Farrar on her own behalf and Stephanie Farrar and Charles Allen, Jr. as co-personal representatives of the Estates

of Chase Allen and "Baby Allen". Defendants are Ryan Paul Lapan and Rucker's Wholesale & Service Co. The matter is before the Court on defendants' motion to dismiss the case based on fabrication of evidence (ECF No. 66) and plaintiffs' motion to withdraw the evidence at issue (ECF No. 67).

The Court heard oral argument on the motions on April 12, 2022. Following argument, the parties filed supplemental briefs addressing possible sanctions short of dismissal. ECF Nos. 80 and 81. Following argument and briefing, the parties engaged in facilitation but did not reach a settlement agreement. For the reasons stated in this opinion and order, defendants' motion to dismiss the case is GRANTED and the case is DISMISSED WITH PREJUDICE. Plaintiffs' motion to withdraw the fabricated evidence is DENIED AS MOOT.

FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2019, Ryan Lapan was driving a service van on I-94 in the City of St. Clair Shores, Michigan, when he rear-ended the automobile driven by Stephanie Farrar ("Farrar"). Farrar was taken to St. John Hospital Moross for treatment of her injuries. At the hospital, Farrar informed the staff she believed she was pregnant. Farrar was given a pregnancy test, which was negative. In the weeks that followed the

accident, various hospitals administered a total of seven pregnancy tests on Farrar, all of which were negative.

Plaintiffs filed their complaint on March 3, 2020, asserting claims on behalf of Farrar individually and on behalf of Farrar and her fiancé Charles Allen, Jr. as co-personal representatives of the Estate of Chase Deshawn Allen. One of the allegations made by plaintiffs is that Farrar sustained trauma in the accident that caused a miscarriage of her pregnancy (ECF No. 1, PageID.10).

On September 15, 2020, Farrar and Charles Allen, Jr., opened a probate estate for "Baby Allen, Deceased." Farrar and Charles Allen, Jr. are identified as the parents of Baby Allen and are named as co-personal representatives of the Estate of Baby Allen. On November 11, 2020, plaintiffs amended the complaint to include claims on behalf of Farrar and Charles Allen, Jr. as co-personal representatives of the Estate of Baby Allen, Deceased.

After the amended complaint was filed, defendants retained Dr. Barbara Levine-Blasé, an Obstetrician and Gynecologist, to review Farrar's medical records and opine regarding whether Farrar was pregnant at the time of the accident and miscarried. Levine-Blasé determined that based upon the seven urine and serum pregnancy tests conducted by hospitals

both on the date of the accident and the days following, Farrar was not pregnant at the time of, or immediately following, the accident. Levine-Blasé opined that since Farrar was not pregnant, she could not have miscarried because of the accident.

Defendants shared Dr. Levine-Blasé's opinion with plaintiffs' counsel on January 26, 2021 and requested that plaintiffs dismiss all claims related to Baby Allen. ECF No. 66-1, PageID.1968. However, plaintiffs continued to claim that Farrar was in fact pregnant at the time of the accident and miscarried. Following discovery, defendants filed a motion for partial summary judgment seeking, in part, the dismissal of all claims brought on behalf of "Baby Allen" because there is no genuine dispute that Farrar was not pregnant at the time of the accident. ECF No. 46.

In their opposition to the motion, dated October 21, 2021, plaintiffs included a photograph showing six positive home pregnancy tests, with a date stamp of December 9, 2019 appearing on the lower right corner. ECF No. 49, PageID.1400. The same photograph was included in plaintiffs' May 11, 2021 initial disclosures as well as their January 12, 2022 facilitation summary. ECF No. 66-1, PageID.2021 and PageID.2040. This is a copy of the photograph submitted by plaintiffs:



Below the picture in plaintiffs' response brief was the following description: "On December 10, 2019, Stephanie Farrar was in fact pregnant. The day prior to his horrific collision, Ms. Farrar found out that she was pregnant by taking the above depicted pregnancy tests." ECF No. 49, PageID.1400-1401.

Plaintiffs supported their assertion that Farrar was pregnant and miscarried with other evidence that referred to the pregnancy tests depicted in the picture. In her deposition on March 2, 2021, Farrar testified that the reason she believed she was pregnant at the time of the accident, and that the accident caused her to miscarry, is because she had taken at-home pregnancy tests before the accident and they all came back positive. ECF

No. 49, PageID.1401. Plaintiffs' expert witness, Dr. Michael Cardwell, M.D. also relied on the "photograph showing positive pregnancy tests taken on December 9, 2019, the day before the collision that gives rise to this litigation." Cardwell Declaration at ¶ 4, ECF No. 49, PageID.1402. Based on the photograph, as well as the other evidence in the case and his experience and training, Dr. Cardwell opined that "Farrar was more likely than not pregnant at the time of the collision" and "more likely than not miscarried due to the trauma of the collision." *Id.* at ¶ 5. When asked at his deposition what other evidence supported his opinion that Farrar was pregnant at the time of the accident and that she miscarried because of the accident, he referred to the positive at-home pregnancy tests and a statement made by Farrar to her OB/GYN doctor two months after the accident. In that statement, Farrar said that she had experienced vaginal bleeding. Cardwell dep. p. 20, ECF No. 66-1, PageID 2062.

On November 19, 2021, this Court concluded, when it viewed the evidence in the light most favorable to plaintiffs, there was sufficient evidence to support a genuine issue of material fact whether Farrar was pregnant on the date of the collision. The evidence considered by the Court included the photograph of the six home pregnancy tests and Dr. Cardwell's opinion. ECF No. 54, PageID.1829-1830.

In February of 2022, defendants discovered that the photograph depicting the six positive home pregnancy tests taken by Farrar was fabricated. Defendants determined that the photograph was posted on several Internet websites as early as 2015. The Court has reviewed the images defendants reproduced from the Internet and concludes that they are identical to the image submitted by plaintiffs, other than that plaintiffs' image has been cropped and a date has been added to the lower right corner.

## ANALYSIS

I. Court's Power to Dismiss Based on Fabrication of Evidence

Defendants ask the Court to use its inherent authority to dismiss plaintiffs' complaint as a sanction for committing a fraud on the court. The court's authority to dismiss an entire case where fabricated evidence has been submitted was explored in depth in a case from this district:

> The Sixth Circuit has long recognized that a trial court's inherent power includes the power to dismiss cases involving flagrant abuses. With respect to the inherent power of courts, the United States Supreme Court in *Chambers v. NASCO, Inc.,* [stated] it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). "For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and

- 7 -

> submission to their lawful mandates.'" [*Id*.] "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" [*Id*.]
>
> While the Supreme Court encourages district courts to first consider any applicable statutory rules for sanctions, the Supreme Court does not require that district courts do so, and it has held that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." [Id. at 49.] Accordingly, the court's inherent power is broad and can be called upon not only to fill-in the interstices between particular rules of conduct, but also may be referred to in addition to said rules, where appropriate. [Id. at 50.] Nevertheless, the court's inherent power must always be exercised with caution, [id. at 43], and the court must take care in the use of inherent powers to impose sanctions.

*Wolfe v. GC Servs. Ltd. P'ship-Delaware*, No. CIV. 08-10628, 2009 WL 230637, at *6 (E.D. Mich. Jan. 30, 2009) (some internal citations omitted).

"When a party fabricates evidence purporting to substantiate its claims, federal case law is well established that dismissal is appropriate." *Id*. at *7-8 (listing cases); *see also Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 878 (E.D. Mich. 2017) ("Not surprisingly, case law is replete with instances where a district court dismissed an action with prejudice upon finding that a party fabricated evidence and presented that evidence to the court in support of its claims.")

In considering defendants' motion to dismiss based on plaintiffs' fabrication of evidence, the Court is guided by the four factors an appellate

court considers in reviewing dismissal, whether under Fed. R. Civ. P. 41(b), Rule 37, or a court's inherent powers: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *U.S. v. Reyes,* 307 F.3d 451, 458 (6th Cir. 2002) (citation omitted). Whether to dismiss a case as a discovery sanction is entrusted to the Court's discretion. *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).

A. <u>Willfulness, Bad Faith, or Fault</u>

Federal courts have the inherent authority to sanction conduct that is taken in bad faith or is "tantamount to bad faith." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980)). Willfulness, bad faith, or fault require "a clear record of delay or contumacious conduct." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). A party's conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Id.* at 705

(quoting *Tung–Hsuing Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).

Fraud on the court has been defined as conduct that "set[s] in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Plastech Holding Corp.,* 257 F. Supp. 3d at 874 (citations omitted). Under this definition, when evidence has been fabricated or falsified to support a party's claim, a fraud on the court has occurred.

In this case, plaintiffs submitted the photograph of the six positive pregnancy tests to support their claim that Farrar was pregnant at the time of the accident and suffered a miscarriage. Farrar testified at her deposition that she had taken the photograph the day prior to the accident. Now, when confronted with the accusation of fraud in defendants' motion to dismiss, plaintiffs' counsel acknowledge that "Ms. Farrar subsequently confirmed that she did not take the photograph." ECF No. 72, PageID.2141.

Defendants argue that plaintiffs' fabrication of the pregnancy test photograph, and their submission of the photograph as evidence to support their claims, amounts to bad faith and a fraud on the court. In comparing the fraudulent photograph with the original on the Internet, obvious efforts

were taken to thwart discovery of any wrongdoing, and the true source of the stock photograph, by cropping the Internet image and adding a date stamp that supports Farrar's story. Clearly, the creation of the fabricated photograph was intentional, willful and done in bad faith. The fabricated photograph was then disclosed to defendants in discovery, to the Court in opposition to defendants' motion for partial summary judgment, and in facilitation.

Plaintiffs attempt to explain Farrar's actions, arguing that Farrar suffered physical and emotional impairments, caused by the collision and exacerbated by the death of her son, which allegedly affected her cognitive functioning. In essence, plaintiffs argue that to the extent Farrar acted willfully or in bad faith in fabricating the photograph, her willingness to take these actions is mitigated due to her circumstances. To support this argument, plaintiffs refer to the neuropsychological evaluation performed by Neuropsychologist Dr. Bradley Sewick, Ph.D., on September 4, 2020. Dr. Sewick concluded that ten-months post-accident, Ms. Farrar "continues to have problems with memory, concentration, and higher-level reasoning and judgment". ECF No. 72-6, PageID.2262.

The fabricated photograph was first introduced into this case in plaintiffs' initial disclosures on May 11, 2021, eight months after Farrar was

examined by Dr. Sewick. Five months later, on October 12, 2021, Farrar underwent an independent medical evaluation by rehabilitation doctor Justin Riutta, M.D., who concluded that Farrar "has no evidence of cognitive deficits during her clinical assessment today." ECF No. 76, PageID.2439. Dr. Riutta's examination of Farrar took place the same month plaintiffs submitted the fabricated photograph as evidence in opposition to defendants' motion for partial summary judgment.

Plaintiffs' mitigation argument is made in a single paragraph of their response brief and was not pursued at oral argument or in their supplemental brief. Furthermore, while Dr. Sewick's report supports that Farrar had a cognitive deficit ten months after the accident, Dr. Riutta's report suggests no deficit one year later when the fabricated evidence was submitted to the Court. In addition, there is no indication that Charles Allen, who is both Farrar's fiancé and a plaintiff as co-personal representative of the Estates of Chase Allen and Baby Allen, suffered mitigating circumstances that prevented him from intervening to stop the bad faith submission of fabricated evidence. Plaintiffs' reference to a somewhat dated medical report is insufficient to mitigate against a finding of bad faith.

The Court concludes that plaintiffs' conduct in fabricating evidence and submitting it to the Court in support of their claims was willful,

undertaken in bad faith, and constitutes a fraud on the court. Indeed, the Court specifically cited to the fabricated photograph in denying defendants' motion for summary judgment on the issue of whether Farrar had a miscarriage because of the accident. This first factor weighs in favor of sanctioning plaintiffs.

    B. Prejudice to Adversary

Although defendants eventually uncovered plaintiffs' fabrication of evidence, that fact does not mean defendants are not prejudiced. "'[S]ubmission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'" *Carroll-Harris v. Wilkie*, No. 2:17-CV-11711, 2019 WL 2205851, at *7 (E.D. Mich. May 22, 2019) (quoting *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009)). In such cases, defendants bear "enormous additional effort and expense to ferret out plaintiff's lies and to double check every piece of information." *Id.* (quoting *Garcia*, 569 F.3d at 1181).

In addition to prejudice suffered by defendants, in this case plaintiffs' conduct is "prejudicial to the system of civil justice generally [because] it involved a fraud on the court." *Id.* (citation omitted). The Court finds that

both defendants and the Court itself have been prejudiced by plaintiffs' misconduct. The second factor also weighs in favor of sanctioning plaintiffs.

### C. Warning About Failure to Cooperate

The Court need not specifically warn the parties that producing falsified discovery documents could lead to a sanction. There are legal standards, including the Federal Rules of Civil Procedure and Rules of Professional Conduct, that set forth a party's and lawyer's responsibility to certify that factual contentions have evidentiary support. See Fed. R. Civ. P. 11(b); Mich. R. Prof'l. Cond. 3.3. Furthermore, unlike the failure to disclose documents during discovery, in which case a warning might be rendered, "when a party is willing to submit altered documentation in discovery, an additional warning would be superfluous." *Id*. This factor weighs in favor of a sanction.

### D. Less Drastic Sanctions

In their response to defendants' motion, plaintiffs offer to withdraw the fabricated evidence, stipulate to dismiss the claims that pertain to the Estate of Baby Allen and replace Ms. Farrar as a personal representative of the Estate of Chase Allen. When pressed by the Court to identify an appropriate sanction less than dismissal, plaintiffs suggest that the Court consider ordering costs and attorney fees incurred due to plaintiffs'

misconduct, excluding the fabricated evidence and allowing defendants to attack plaintiffs' credibility by presenting evidence of their wrongdoing to the jury, and prohibiting plaintiffs from referring to a miscarriage at trial. The Court finds each of these alternatives insufficient.

First, ordering plaintiffs to pay a fine would not "remedy the harm to the public's interest in preserving the integrity of the courts and would inadequately deter potential future misconduct." *Carroll-Harris*, 2019 WL 2205851, at *8. Furthermore, a fine is not an adequate solution to defendants' concern about the veracity of other evidence provided by plaintiffs. *Id*.

Second, merely excluding the fabricated photograph from evidence would allow plaintiffs and other litigants to believe they have "'everything to gain, and nothing to lose' by manufacturing evidence." *Id*. (citation omitted). Allowing defendants to attack Farrar's credibility by permitting the jury to hear evidence regarding her fraudulent conduct is more complicated. For one thing, the fraud in this case was prolonged, repeated and egregious. It lasted over a year and plaintiffs only tried to correct it once their fraud was exposed. Plaintiffs repeatedly relied on the fraudulent photograph in pleadings, depositions, expert affidavits, and dispositive motions. The mechanics of how the fraud was committed are not known to the Court but

would be a fair subject for discovery. The issue of plaintiffs' fraud would end up competing with the merits of plaintiffs' claims.

The other problem with allowing defendants to use evidence of the fraud to attack Farrar's credibility is that she herself permeates the entire case. Farrar was the driver of the car and therefore a fact witness to the accident. Much of the police investigation was based on Farrar's statements. As a plaintiff seeking recovery for her personal injuries, Farrar's medical records, which contain information provided directly by her, are evidence in the case. As the mother of Chase Allen, Farrar may be called as a witness to "damages for the loss of financial support and the loss of the society and companionship of the deceased." Mich. Comp. Laws § 600.2922(6). In addition, if either estate recovers, Farrar is a likely taker as a parent and heir. It is inconceivable that the Court can conduct a trial on even a portion of this case while maintaining the integrity of the judicial system.

Plaintiffs suggest that due process considerations dictate that the Court must consider whether the fabricated evidence pertains to each party's claims separately in determining an appropriate sanction. As such, plaintiffs contend that the fabricated photograph has no bearing on the merits of the claims brought by the Estate of Chase Allen so dismissal of

those claims is inappropriate. For authority that dismissal is an inappropriate sanction when the fabricated evidence is unrelated to the merits of a party's claims, plaintiffs cite to *Phoceene Sous-Marine, SA v. US Phosmarine, Inc.*, 682 F.2d 802 (9th Cir. 1982). In that out-of-circuit case, plaintiff fabricated a note from his physician to support his request for a delay of trial. The district court entered a default judgment against plaintiff based on his willful deception. After defining a "fraud on the court" as "an unconscionable plan or scheme which is designed to improperly influence the court in its decision," the Ninth Circuit concluded "that the entry of default as a sanction for a deception of the court on a matter wholly unrelated to the merits of the controversy is inconsistent with the requirements of due process." *Id*. at 805-806.

Plaintiffs' request that this Court focus on individual claims to determine whether the fabricated evidence has any relevance to the merits of the claim is not supported by the Ninth Circuit's holding. The deception in *Phoceene Sous-Marine* was in tricking the court into granting an adjournment of trial. There was no fabrication or fraud related to the merits of *any* claim that was pending decision by the court.

Of course, the Court "must comply with the mandates of due process" in making its determination about the bad faith of a party and an

appropriate sanction. *Chambers*, 501 U.S. at 50. Due process requires that the party receives "fair notice and an opportunity for a hearing on the record." *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011). In this case, defendants' motion to dismiss as a sanction pursuant to the Court's inherent authority provided plaintiffs with notice. Plaintiffs had an opportunity to be heard on the issues in their written response brief (ECF No. 72), at oral argument, and in a supplemental brief (ECF No. 80).

As our district authority instructs, courts do not consider the merits of substantive claims in determining a sanction for fraud on the court. *Carroll-Harris*, 2019 WL 2205851, at *5 (citing *Plastech Holding Corp.*, 257 F. Supp. 3d at 874 n.8 (explaining that because the Court found a party's misconduct warranted dismissal as a sanction, it would not address the merits)). This is in keeping with the sanction being to punish a party for abusing the judicial system itself. Dismissing only the claims to which the fraudulent evidence relates does not account for the wrongdoing. Such a sanction would create "an incentive for a plaintiff, who has brought multiple claims, to try to fraudulently bolster one of her claims because[,] if caught, she could always litigate the other claims." *Id*. at *9.

Having found that the fabrication of evidence in this case was done in bad faith and amounts to a fraud on the court, "[t]o ensure the integrity of

the judicial process and deter future parties from engaging in similarly egregious conduct," the Court concludes that dismissal of plaintiffs' case with prejudice is warranted. *Plastech Holding Corp.*, 257 F. Supp. 3d at 878; s*ee also, Carroll-Harris*, 2019 WL 2205851, at *8 ("when a party fabricates discovery, 'the interests of the judicial system militate strongly in favor of dismissal of the suit as to deter all litigants from such misconduct in the future.'").

The fourth factor weighs heavily in favor of dismissal of plaintiffs' case.

## CONCLUSION

Having concluded that dismissal is the only sanction that will maintain the integrity of the judicial system,

IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No. 66) is GRANTED and plaintiffs' First Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS HEREBY FURTHER ORDERED that plaintiffs' motion to withdraw evidence (ECF No. 67) is DENIED AS MOOT.

So ordered.

Dated:  September 9, 2022

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE

- 20 -

> CERTIFICATE OF SERVICE
>
> Copies of this Order were served upon attorneys of record on September 9, 2022, by electronic and/or ordinary mail.
>
> s/Brianna Sauve
> Deputy Clerk